**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANGEL L. DEJESUS, JR., et al, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 5:23-cv-03424-JLS |
| | : | |
| LOUIS SANTIAGO, *et al.*, | : | |
| | : | |
| Defendants. | : | |

<u>**MEMORANDUM OPINION**</u>

**SCHMEHL, J. /s/ <u>JLS</u>**                                                              **July 10, 2026**

Plaintiffs Angel DeJesus and Caroline Morales initiated this action against law enforcement officer Defendants Louis Santiago, Matthew Karnish, Alexander Boehm, Brian Branston, Justin Williams, and Michael Good seeking damages under 42 U.S.C. § 1983 for unreasonable use of force and failure to intervene in violation of Mr. DeJesus's rights as guaranteed by the Fourth Amendment to the United States Constitution, as well as under state law for assault and battery, negligent infliction of emotional distress, willful misconduct and loss of consortium in connection with an encounter between Mr. DeJesus and the Defendants that took place on November 4, 2021. Defendants now move this Court to grant summary judgment on the grounds that Plaintiffs have set forth no evidence to support Mr. DeJesus's claims for excessive force, assault and battery, negligent infliction of emotional distress and willful misconduct or Ms. Morales's claim for loss of consortium. Defendants additionally argue they are entitled to qualified immunity on Mr. DeJesus's constitutional claims, that Plaintiff's state law claims are barred pursuant to the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), and that

Defendants should be granted official immunity on the state law claims under the Tort Claims Act. For the following reasons, the Court will grant the Defendants' Motion for Summary Judgment.

I.    BACKGROUND

On November 4, 2021, Officers Louis Santiago, Matthew Karnish, Alexander Boehm, Brian Branston and Justin Williams responded to the 1800 block of S. 5th Street in the city of Allentown, PA for a motor vehicle accident with injuries. (ECF No. 38-2, the Blue Team Report, attached as Exhibit A). Officer Michael Good was not on scene of the accident and had no interaction with Mr. DeJesus during the events described in the Complaint. (*See id*.) While the officers were on scene investigating the accident, Mr. DeJesus walked over to the vehicles involved in the accident, appearing to be distressed and looking for his wife. (*See* ECF No. 38-3, the body cam of Officer Justin Williams at 7:30 – 7:42, attached as Exhibit B).

Mr. DeJesus crossed over the police tape (ECF No. 38-4, deposition of Plaintiff at page 39, attached as Exhibit C), barefoot and under the influence of oxycodone. (*Id* at p. 40; *see* ECF No. 38-3). He was escorted away from the scene and told to call his wife. (*See* ECF No. 38-3). Approximately three (3) minutes later, Mr. DeJesus returned to the scene. (*See id.* at 10:59; *see* ECF No. 38-5, body cam of Officer Branston at 00:00 – 2:00, attached as Exhibit D). The officers attempted to detain him (*see* ECF No. 38-3 at 11:10), and he told the officers not to grab him, and attempted to avoid detainment and push the officers away from him. (*See* ECF No. 38-4, Plaintiff Dep. at p. 45). Mr. DeJesus continued to resist the officers' attempts to handcuff him, bending over and stiffening his arms. (*See* ECF No. 38-3 at 11:10 - 11:50; *see* ECF No. 38-5).

Once handcuffed, Mr. DeJesus further resisted the officers' attempts to place him in a patrol car. (*See* ECF No. 38-3 at 12:20- 12:50). In the footage of the incident, no officer is seen

striking, kicking or punching Mr. DeJesus (*see id.* at 11:20 – 12:50; ECF No. 38-5 at 00:00 – 2:00), and Mr. DeJesus is not heard complaining that the handcuffs were too tight. (*See* ECF No. 38-5 at 00:00 – 2:00; *see* ECF No. 38-6, body cam of Officer Branston at 00:00 – 05:24, attached as Exhibit E). Further, officers took Mr. DeJesus to St. Luke's Sacred Heart Hospital after he complained that he had a fever, and no injuries to his wrists were identified or treated. (ECF No. 38-7, medical records from Sacred Heart Hospital, attached as Exhibit F). Results of a musculoskeletal examination were within normal limits. (*Id*).

Plaintiffs initiated this action on September 1, 2023. (ECF No. 1). On October 18, 2023, counsel for Defendants provided counsel for Plaintiffs with the various videos of the incident captured by body cams of the officers on the scene as well as the Blue Team Report. (ECF No. 38-9, the October 18, 2023 correspondence, attached as Exhibit H). Defendants then filed an answer with affirmative defenses on October 23, 2023. (ECF No. 8). On March 6, 2024, counsel for Plaintiffs filed a motion to withdraw his appearance. (ECF No. 17). The Court granted that motion on June 5, 2024. (ECF No. 25). Plaintiffs are now appearing *pro se*.

In discovery, Defendants produced to Plaintiffs all videos capturing the incident and documents related to it, Lehigh County jail records, and medical records from St. Luke's Sacred Heart Hospital. Mr. DeJesus was deposed on February 10, 2025, and he produced sixteen (16) pages of incident reports to Defendants that he obtained in the underlying criminal matter. Defendants filed their motion for summary judgment (ECF No. 37) and statement of facts in support of the motion (ECF No. 38) on April 7, 2025. Mr. DeJesus filed an Exhibit in opposition to their motion for summary judgment (ECF No. 44) on July 22, 2025, which contains photos of injuries he alleges were inflicted by Defendants at some unspecified time on the night of the incident.

## II.    STANDARD OF REVIEW

On a motion for summary judgment, the court must consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted).  Summary judgment is proper when there is no genuine dispute of material fact, and the movant is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."  *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

If the movant carries its initial burden of showing the basis of its motion, the burden shifts to the non-moving party to go beyond the pleadings and point to "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  In other words, the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue."  *Podobnik v. US. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (citation and internal quotation marks omitted). Summary judgment must be granted against a non-moving party who fails to sufficiently "establish the existence of an essential element of its case on which it bears the burden of proof at trial."  *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

## III.    ANALYSIS

Mr. DeJesus brings claims against each Defendant in his individual capacity under 42 U.S.C. § 1983 for deprivation of his right to be secure in his person from an unreasonable and

4

excessive use of force in violation of his rights as guaranteed by the Fourth Amendment of the Constitution and Pennsylvania state law claims against all Defendants of assault and battery, negligent infliction of emotional distress, and willful misconduct. Ms. Morales brings a Pennsylvania state law claim against all Defendants for loss of consortium.

In their Complaint, Plaintiffs allege that on the night of the incident at issue, someone had notified Mr. DeJesus that his wife may have been in a motor vehicle accident. (ECF No. 1 at ¶ 17). He ran toward the intersection and saw a white SUV overturned in the intersection with yellow police tape cordoning off the scene. (*Id.* at ¶ 18). Believing the overturned vehicle was his wife's vehicle, that his wife was in the vehicle, and that his wife may have been seriously injured, Mr. DeJesus continued running to the intersection, yelling his wife's name. (*Id.* at ¶ 19). As he approached the scene, he crossed the police tape in an attempt to reach the overturned vehicle. (*Id.* at ¶ 20).

Plaintiffs allege that before he reached the vehicle, Mr. DeJesus was grabbed and violently beaten about his head and body by several Allentown police officers, including the named Defendants (*id.* at ¶ 21), while other Allentown police officers, including the named Defendants, observed and failed to intervene. (*Id.* at ¶ 22). Plaintiffs additionally allege that Mr. DeJesus was handcuffed in an improper manner when he was subsequently arrested, causing injuries to and ongoing pain in his wrists, about which he contemporaneously complained to the arresting officer(s), none of whom took any steps to adjust the handcuffs. (*Id.* at ¶ 24). Plaintiffs contend the alleged beating and improper handcuffing caused physical injuries requiring medical, dental, and other health care including but not limited to a concussion/closed head injury, dental injuries, and injuries to his wrists and left shoulder. (*Id.* at ¶ 28(b)).

### A.  FOURTH AMENDMENT CLAIMS

Mr. DeJesus's federal claims arise under 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ....

42 U.S.C. § 1983. To maintain an action under § 1983, Mr. DeJesus must plausibly allege a violation of a right secured by the Constitution or laws of the United States committed by a person or persons acting under color of state law, here, a violation of his Fourth Amendment right to be secure in his person from an unreasonable and excessive use of force.

To state a claim of excessive force under the Fourth Amendment, "a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004). An officer seizes an individual when he restrains the individual's freedom to walk away. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). In this case, it is undisputed that Mr. DeJesus was seized by the arresting officer Defendants, so the remaining inquiry is whether the force they used in doing so was unreasonable.

An analysis of the reasonableness of force used by an officer requires a balancing of multiple factors, weighing the intrusion on one's Fourth Amendment interests and the countervailing governmental interests. *Graham v. Connor*, 490 U.S. 386, 395–96, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Courts consider the totality of circumstances, including "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. A factfinder must assess the reasonableness of a particular use of force "based upon the information the officers

had when the conduct occurred," *Saucier v. Katz*, 533 U.S. 194, 207 (2001), not "with the 20/20 vision of hindsight," *Graham*, 490 U.S. at 396.

Importantly, officers' "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. The Third Circuit has clarified that "police officers are privileged to commit a battery pursuant to a lawful arrest, but the privilege is negated by the use of excessive force." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) (citation modified). Additionally, to survive a motion for summary judgment, "a § 1983 plaintiff must produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial." *Klein v. Madison*, 374 F. Supp. 3d 389, 408 (E.D. Pa. 2019) (*citing Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018)).

Here, the Complaint does not provide any specifics regarding the Defendants' roles in the alleged events. It alleges that each Defendant may be responsible for the battery, for failure to intervene, and for improperly handcuffing Mr. DeJesus. (ECF No. 1, ¶¶ 21-3). Additionally, the Defendants have set forth evidence showing that Defendant Officer Good was not present for or involved in the events at issue. (ECF No. 38, Exhibit A).

There's no factual dispute presented in the record that might permit a reasonable juror to conclude that the Defendants used excessive force against Mr. DeJesus. The officers' use of force against the Plaintiff, captured with bodycam footage, was reasonable. The officers were trying to attend to those involved in a serious vehicular accident and ensure emergency medical care was being provided, and Mr. DeJesus was interfering and diverting their attention away from handling the situation. He was clearly under the influence, slurring his words and unable to be reasoned with despite the officers' calm attempts to deescalate his emotional state.

When Mr. DeJesus entered the accident scene a second time and the officers attempted to direct him away, he began to swing his arms. With the limited information they had, the officers could not determine if he was a danger to himself, others, or the officers. Mr. DeJesus attempted twice to interfere with the officers' investigation of the accident before any force was used. Under *Graham*, considering the totality of the circumstances and the evidence in the record, the force used to subdue Mr. DeJesus was clearly reasonable. Although Mr. DeJesus filed an Exhibit of photos of himself with injuries, there is no evidence of excessive force in the record, the allegations are not specific as to each Defendant or when the alleged excessive force took place, and it is unclear when the photos in the Exhibit were taken. Without sufficient evidence or specificity, a reasonable jury could not find in favor of Mr. DeJesus on his excessive force claim against the officers.

Mr. DeJesus's Fourth Amendment excessive force handcuffing claim similarly fails. Under controlling Third Circuit precedent, a successful excessive force claim arising out of the use of handcuffs requires a showing that 1) the plaintiff explicitly complained about the tightness, 2) the officer ignored or refused the complaints, and 3) the plaintiff was injured as a result. *Lugo v. DeAngelo*, No. 19-cv-1442, 2021 WL 4477448, at *3 (E.D. Pa. Sept. 30, 2021) (Sánchez, C.J.) (citing *Gilles v. Davis*, 427 F.3d 197 (3d Cir. 2005)).

As noted in the Background section above, Mr. DeJesus is not heard complaining that the handcuffs are too tight in the bodycam footage, and the medical records from his examination that night do not identify any injuries to his wrists. He is also unable to identify which officer or officers he allegedly complained to about the handcuffs. As is the case with the general excessive force claim, without sufficient evidence or specificity, the excessive force handcuffing claim against the Defendants fails. It is unnecessary to consider whether the Defendants are entitled to

8

qualified immunity in the absence of a viable claim against them for violating a statutory or constitutional right.

### B. STATE LAW CLAIMS

Mr. Dejesus brings assault, battery, and negligent infliction of emotional distress Pennsylvania law tort claims, and Plaintiff Caroline Morales brings a loss of consortium Pennsylvania law tort claim. Defendants assert that these claims fail, and that additionally, the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA") grants them immunity from these claims.

The PSTCA grants broad immunity from tort suit to local agencies and their employees, subject to certain exceptions enumerated in 42 Pa. C.S. § 8542 and § 8550. For agency employees, it is a defense "that the conduct of the employee which gave rise to the claim was authorized or required by law, or that he in good faith reasonably believed the conduct was authorized or required by law." *Id.* § 8546(2). This provision protects employees absent a finding that the employee committed a crime, actual fraud, actual malice, or willful misconduct. *Id.* § 8550. A negligent infliction of emotional distress claim, which is "predicated on negligence and not intent," does not trigger the willful misconduct exception to immunity. *Vega v. Columbia Borough*, No. 08-cv-5932, 2009 WL 2143549, at *5 (E.D. Pa. July 15, 2009). Therefore, the Defendants are necessarily entitled to immunity on that claim.

As to the other state law claims, the Defendants are also clearly immune under the PSTCA. First, there is no dispute that the alleged conduct of the Defendants arose from, was reasonably related to or was within the scope of their duties as police officers for the City of Allentown Police Department. Second, these state tort claims do not fall within one (1) of the

nine (9) exceptions to governmental immunity. Third, as discussed in the analysis of Mr. DeJesus's excessive force claims, there is no evidence of conduct, or individualized allegations of conduct, by any of the Defendants that constitutes a crime, actual fraud or malice, or willful misconduct.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment will be granted. A corresponding order accompanies this memorandum.